

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1341-14

**STACY STINE CARY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### COLLIN COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., JOHNSON, KEASLER, ALCALA, RICHARDSON, YEARY, and NEWELL, JJ., joined. MEYERS, J., did not participate.

## O P I N I O N

Appellant, Stacy Stine Cary, was convicted by a jury of six counts of bribery, one count of money laundering, and one count of engaging in organized criminal activity. Her sentence was probated, but she was ordered to serve 30 days' confinement as a condition of her probation. A split panel of the Dallas Court of Appeals affirmed her convictions. *Cary v. State*, No. 05-12-01421-CR, 2014 WL 4261233 (Tex. App.—Dallas Aug. 28,

2014) (not designated for publication). In four grounds, she alleges that the evidence was legally insufficient to support her convictions, and in a fifth ground she argues that the trial court reversibly erred when it excluded certain evidence.[1] Because we sustain her first and fourth grounds, we will reverse and render an acquittal on each count and need not reach the other three grounds for review.

## BACKGROUND[2]

This case involves a number of actors: David Cary (David), Jennifer Cary (Jennifer), Stacy Stine Cary (Stacy), Judge Charles Sandoval (Sandoval), James Spencer (Spencer), and Suzanne Wooten (Wooten). David was married to Jennifer, and they had two children. In 2003, David filed for divorce. Judge Sandoval of the 380th District Court

---

[1]The grounds upon which we granted review state,

(1) Whether the State's case affirmatively proved that the alleged bribes were "political contributions," which would mean that Appellant was not guilty of bribery as charged?

(2) Whether the evidence was sufficient to show the requisite consideration to support the bribery convictions?

(3) Whether the evidence was sufficient to show that Appellant had the requisite intent to commit bribery?

(4) Whether the evidence was sufficient to support [Appellant]'s conviction for engaging in organized criminal activity and money laundering?

(5) Whether the trial court committed reversible error by excluding evidence, for which error was properly preserved, that showed there was no need to bribe a judge to obtain favorable rulings?

[2]We discuss only the facts relevant to the disposition of this appeal. However, the court of appeals discussed the facts of the case at length. *Cary*, 2014 WL 4261233, at *1–26.

of Collin County presided over that litigation. After the final divorce decree was signed in 2004, protracted child custody litigation ensued. Sandoval also presided over those proceedings. In early December 2006, David married Stacy, and later that month, Sandoval removed David as joint managing conservator of his children with Jennifer.

At some point in 2007, David and Stacy sought to change the law through the legislature to remedy David's family law woes and to help other parents. In trying to accomplish that goal, David and Stacy (the Carys)[3] were introduced to Spencer. Like the Carys, Spencer had an interest in family law, and when the three met in person for the first time, Stacy allegedly hired Spencer to perform consulting work for her. Between January 4, 2008 and March 14, 2008, Stacy transferred $150,000 to Spencer. During the time period in which Stacy was transferring money to Spencer, Spencer recruited Wooten to run against Sandoval. The State asserts that the consulting agreement between Stacy and Spencer was a sham and that the $150,000 was really a bribe, or an offer of a bribe, from Stacy to Wooten (made indirectly through Spencer) to induce Wooten to run against Sandoval so she could issue rulings favorable to the Carys once elected.

Stacy was convicted on all counts, and she appealed. After losing her appeal, she filed a petition for discretionary review, which we granted.

**LAW OF BRIBERY**

Stacy was charged with bribery under Section 36.02(a)(1) and (a)(2) of the Penal

---

[3]Throughout the opinion, "the Carys," refers to David and Stacy. We identify Jennifer Cary by only her first name.

Code. A person charged under those provisions is not guilty of bribery if the benefit offered was a political contribution. TEX. PENAL CODE § 36.02(d). Before this Court, Stacy now claims that the political-contribution exception applies to her because the evidence shows that the money she offered was intended to be used in connection with a campaign for public office. The bribery statute states in relevant part that,

>  (a) A person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another:

>  (1) any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter;

>  (2) any benefit as consideration for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding;

>  (3) any benefit as consideration for a violation of a duty imposed by law on a public servant or party official; or

>  (4) any benefit that is a political contribution as defined by Title 15, Election Code, or that is an expenditure made and reported in accordance with Chapter 305, Government Code, if the benefit was offered, conferred, solicited, accepted, or agreed to pursuant to an express agreement to take or withhold a specific exercise of official discretion if such exercise of official discretion would not have been taken or withheld but for the benefit; notwithstanding any rule of evidence or jury instruction allowing factual inferences in the absence of certain evidence, direct evidence of the express agreement shall be required in any prosecution under this subdivision.

>  (b) It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office or he lacked jurisdiction or for any

other reason.

*     *     *

(d) It is an exception to the application of Subdivisions (1), (2), and (3) of Subsection (a) that the benefit is a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305, Government Code.

(e) An offense under this section is a felony of the second degree.

*Id.* § 36.02 (internal footnote omitted).

## COGNIZABILITY

Before we can reach the merits of Stacy's argument, however, we must determine whether the issue is properly before us. For the reasons that follow, we conclude that it is.

Unassigned Error

Stacy did not argue in the court of appeals that her bribery convictions should be reversed because the State failed to negate the political-contribution exception. Writing in dissent, Justice Fitzgerald asserted that the majority should nonetheless address the issue in the interest of justice. *Cary*, 2014 WL 4261233, at *41 (Fitzgerald, J., dissenting). The majority disagreed, but it nonetheless responded to the merits of Fitzgerald's reasoning and rejected it. *Id.* at *34 (majority opinion).

In her petition for discretionary review and brief on the merits, Stacy argues that the "political contribution" issue is properly before us. She concedes that she did not raise it at the court of appeals, but according to her, in addressing the merits of the issue, the court of appeals effectively exercised its power to reach the unassigned error. The State

did not file a response to Stacy's petition for discretionary review, and it does not reference unassigned error in its brief on the merits.

We agree with Stacy that the court of appeals reached the unassigned error when it analyzed the "political contribution" exception. Thus, the issue is properly before us. *Sanchez v. State*, 209 S.W.3d 117, 120–21 (Tex. Crim. App. 2006).

Invited Error

Next, the State argues that Stacy should be estopped under the invited-error doctrine from arguing on appeal that the wire transfers were political contributions because her trial theory was that the wire transfers were compensation for consulting work. For support, it cites our opinion in *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999).

In *Prystash*, we explained that "the law of invited error estops a party from making an appellate error of an action it induced." *Id.* Here, however, no action was induced by Stacy. Thus, the doctrine is inapplicable. And, at any rate, in a sufficiency analysis, the only issue is whether a rational jury could have found each essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). The arguments of the parties and their trial theories are not evidence, and as a result, they are of no consequence in a sufficiency analysis. *Ex parte Bryant*, 448 S.W.3d 29, 41 n.15 (Tex. Crim. App. 2014) (arguments are not evidence); *see also Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015) (in conducting a legal-sufficiency analysis, the

reviewing court examines only the admitted evidence).

## CONSTRUCTION OF THE
## POLITICAL-CONTRIBUTION EXCEPTION

Stacy argues that Section 36.02(d) of the Texas Penal Code excludes by its plain language all political contributions from the offense of bribery as charged in this case, including those that exceed the maximum allowable amount under the law. Justice Fitzgerald, who dissented, agrees with Stacy. *Cary*, 2014 WL 4261233, at *43 (Fitzgerald, J., dissenting). The majority of the court of appeals, however, concluded that the statutory definition of "political contribution" is limited to *legal* political contributions[4] (i.e., those that do not exceed the maximum amount in a judicial race), although it did not explain its reasoning.[5] *Cary*, 2014 WL 4261233, at *34 (majority opinion) ("[A] rational jury could have reasonably found that Stacy's payments were not political contributions as defined by the statute."). The State does not address this particular argument, but it is relevant to the disposition of this appeal, so we address it now.

---

[4]During the relevant time period, the maximum contribution by an individual in a judicial campaign in Collin County was $2,500. TEX. ELEC. CODE § 253.155(b).

[5]The court of appeals treated the phrase "political contribution" in two contradictory ways. In its discussion of the jury charge, the court explained that the definition used by the trial court was proper because it "essentially tracks the language of the applicable statute." *Cary*, 2014 WL 4261233, at *34 (citing TEX. ELEC. CODE § 251.001). However, when discussing in the very next paragraph why the jury could have found that the wire transfers were not political contributions, the court applied a much more narrow definition, grafting on extra requirements beyond the statutory definition.

Applicable Law

Statutory construction is a question of law, which we review de novo. *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011). In analyzing the language of a statute, we "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Id.* (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). To do so, we first look to the text of the statute and read words and phrases contained therein in context and construe them according to normal rules of grammar and usage. *Id.* (citing *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008)). We also "presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *Id.* (quoting *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)). If the language of the statute is plain, we will effectuate that plain language without resort to extra-textual sources. However, if an interpretation of the language would lead to absurd results or the language is ambiguous, then we may review extra-textual resources to discern the collective intent of the legislators that voted to pass the bill. *Id.* (citing *Boykin*, 818 S.W.2d at 785).

Analysis

Stacy was charged with bribery under Section 36.02(a)(1) and (a)(2) of the Penal Code. Under those provisions, an actor has not committed bribery if the offered benefit (i.e., money) is a political contribution as defined by Title 15 of the Election Code. TEX.

PENAL CODE *Id.* § 36.02(d). The relevant statutory provision provides that,

> It is an exception to the application of Subdivisions (1), (2), and (3) of Subsection (a) that the benefit is a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305, Government Code.

*Id.* The pertinent question here is what is meant by the phrase, "as defined by Title 15, the Election Code." We conclude that the language is plain, that it refers specifically to Section 251.001 of the Texas Election Code defining "political contribution," and that the court of appeals erred when it concluded otherwise.

Title 15 is divided into chapters which are in turn divided into statutory sections. The first chapter is titled, "General Provisions." Of the nine sections in that chapter, eight reference Title 15 in general, including the definitions section. That provision defines twenty terms used "in this title," and it specifically defines "political contribution." TEX. ELEC. CODE § 251.001. There is no other statutory provision within Title 15 that defines "political contribution."

The court of appeals seemed to believe that the definition of "political contribution" was modified *sub silentio* by Section 253.155 of the Election Code, which sets out contribution limits in a judicial campaign. *Id.* § 253.155; *Cary*, 2014 WL 4261233, at *34. We disagree. The statutory section relied on by the court of appeals deals with restrictions on contributions and expenditures; it does not, however, purport to change the definition of a political contribution. And, unlike the general-provisions chapter, there is no indication that Chapter 253 applies to all of Title 15. By its own

language, the provision categorizes political contributions only into those that are lawful for a candidate or officeholder to accept and those that are not. *Id.*

After examining the relevant statutes, we believe the better interpretation of Section 36.02(d) is that, in referring to a "political contribution" "as defined by Title 15, Election Code," the statute refers only to the definition of "political contribution" in Section 251.001 of Title 15 of the Election Code. Based on this, we also conclude that the political-contribution exception in Section 36.02(d) excludes all political contributions without regard to whether they are within the allowable legal limits. With this background, we now turn to the question of whether the State met its burden to negate the political-contribution exception beyond a reasonable doubt.

## MERITS OF POLITICAL-CONTRIBUTION EXCEPTION

Applicable Law

*Sufficiency of the Evidence*

The State must prove each essential element of an offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19. But it need not exclude every conceivable alternative to a defendant's guilt. *Ramsey*, 473 S.W.3d at 811. When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19.

Viewing the evidence "in the light most favorable to the verdict" means that the reviewing court must defer to the credibility and weight determinations of the jury because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Jackson*, 443 U.S. at 319. But notwithstanding a court's deference to the jury's credibility and weight determinations, the jury's finding of guilt must be a rational one in light of *all* of the evidence presented at trial. *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004). Juries are allowed to draw any reasonable inference from the facts so long as each inference is supported by the evidence presented at trial. *Jackson*, 443 U.S. at 319; *see Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). Speculation about the meaning of the facts or evidence, however, is never sufficient to uphold a conviction. *Hooper*, 214 S.W.3d at 16. When the record supports conflicting, reasonable inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326.

## *The Law of Parties*

Parties to an offense may be charged with commission of a crime as if they committed it themselves. TEX. PENAL CODE § 7.01(a) & (b). To prove party liability, the State must show that the offense was committed and that the accused acted "with intent to promote or assist commission of the offense" by soliciting, encouraging, directing, aiding, or attempting to aid the primary actor. *Id.* § 7.02(a)(2); *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985). Without evidence of intentional participation by the accused, an

accused may not be convicted under the law of parties. *Acy v. State*, 618 S.W.2d 362 (Tex. Crim. App. 1981). The necessary specific intent can be proven through circumstantial evidence, and we may rely on events that took place before, during, or after the commission of the offense. *Wygal v. State*, 555 S.W.2d 465 (Tex. Crim. App. 1977).

*Bribery*

In the bribery statute, "benefit" is defined as anything reasonably regarded as pecuniary gain or pecuniary advantage. TEX. PENAL CODE § 36.01(3). As we have discussed, a notable exception to the definition of "benefit" under sections 36.02(a)(1) and (a)(2)—the subdivisions under which Stacy was charged—are political contributions. *Id.* § 36.02(d). As an exception to the offense, the State must prove beyond a reasonable doubt that any benefits that Stacy offered to Wooten were not political contributions. *Id.* § 2.02. A "contribution" is a direct or indirect transfer of money, goods, or services, or anything of value,[6] and a contribution is a political one if it can be characterized as a campaign or officeholder contribution. TEX. ELEC. CODE § 251.001(5). A "campaign contribution" is one that is given or offered "with the intent that it be used in connection with a campaign for elective office or on a measure." *Id.* § 251.001(3).

Analysis

The State charged Stacy with intentionally and knowingly offering, conferring, or agreeing to confer a benefit, other than a political contribution as defined by Title 15 of

---

[6]TEX. ELEC. CODE § 251.001(2).

the Election Code, as consideration for Wooten filing paperwork to become a candidate,

for continuing her campaign to unseat Sandoval, and for rulings favorable to the Carys

once elected. Those allegations are based on six transfers of money totaling $150,000

between January 4, 2008 and March 14, 2008.

Because of how the State charged this case,[7] its burden of proof became a

balancing act. If Stacy gave the money to Spencer with the intent of compensating him for

consulting services or only in the hope that he would get *someone* to run against

Sandoval, the State has not met its burden of proof because Stacy did not offer to confer a

benefit on Wooten. Similarly, if Stacy offered money to Wooten to finance her campaign

in exchange for Wooten entering the race, for continuing the race, and for favorable

rulings once elected, Stacy has not committed a crime as charged because the money she

offered constituted political contributions. TEX. PENAL CODE § 36.02(d); TEX. ELEC.

---

[7]Unlike Section 36.02(a)(1) and (a)(2), under which Stacy was charged, Section 36.02(a)(4) of the Penal Code defines a bribery offense that prohibits the giving of political contributions under certain circumstances. TEX. PENAL CODE § 36.02(a)(4). That provision states that a person commits bribery if he intentionally or knowingly offers, confers, or agrees to confer on another

> any benefit that is a political contribution as defined by Title 15, Election Code . . . if the benefit was offered, conferred, solicited, accepted, or agreed to pursuant to an express agreement to take or withhold a specific exercise of official discretion if such exercise of official discretion would not have been taken or withheld but for the benefit; notwithstanding any rule of evidence or jury instruction allowing factual inferences in the absence of certain evidence, direct evidence of the express agreement shall be required in any prosecution under this subdivision.

TEX. PENAL CODE § 36.02(a)(4) (footnote omitted).

CODE § 251.001(3), (5). As the State aptly put it, the only way it could meet its burden of proof was to show that (1) Stacy gave the money to Spencer with the aim of "bribing" Wooten to enter the race, to continue her campaign, and to issue favorable rulings once elected, but that (2) Stacy had no intent for her money to be used in Wooten's campaign.[8]

The State's theory of the case was that David and Stacy wanted Sandoval unseated because he unfairly ruled against the Carys. The State alleged that Stacy planned to unseat Sandoval by bribing the person recruited by Spencer—Wooten—to run against Sandoval. The allegations that Stacy improperly induced Wooten to enter the race and to continue campaigning were only steps along the path to Stacy's ultimate objective—favorable rulings. To get those favorable rulings, Wooten had to get elected.

The court of appeals, addressing the State's continuing and favorable-rulings theories,[9] exhaustively reviewed the evidence and concluded that a rational jury could have reasonably inferred that Stacy indirectly offered the $150,000 to Wooten to bribe her to run against Sandoval and give the Carys favorable rulings. *Cary*, 2014 WL 4261233, at

---

[8]The State argues that, when the evidence is "properly analyzed under the *Jackson* standard, and direct and circumstantial evidence *against* the jury's verdict is ignored, a rational juror could have reasonably found that [Stacy]'s payments were not political contributions." State's Brief on the Merits at 36 (emphasis in original). That is a misstatement of law. In a legal-sufficiency analysis, no evidence is "ignored" because the standard requires a reviewing court to view *all* of the evidence in the light most favorable to the verdict. *Jackson*, 443 U.S. at 318–19; *Moff*, 131 S.W.3d at 489. In this case, that distinction is of particular importance.

[9]The court of appeals did not address the State's theory that Stacy bribed Wooten by inducing her to become a candidate because it found the evidence sufficient on the State's other two theories—the "continuing to campaign" theory and the "favorable rulings" theory. *Cary*, 2014 WL 4261233, at *28.

*29–34; *see* TEX. ELEC. CODE § 251.001 ("contribution" includes indirect transfers of money). We agree with the court of appeals that a rational jury could have so inferred. However, the majority went on to erroneously conclude that "a rational jury could have reasonably found that Stacy's payments were not political contributions as defined by statute." *Id.* at *34. This mistake led the court into error.

When the correct definition of "political contribution" is used to examine the sufficiency of the evidence,[10] no rational jury could have reasonably believed that Stacy sought to get Wooten elected so the Carys could get favorable treatment, but that Stacy had no intention that her money would be used to elect Wooten. In other words, the only benefits conferred to Wooten were transfers of funds from Stacy to Spencer to fund Wooten's campaign. As charged in this case, it is insufficient to show that a person intentionally and knowingly offered a benefit as consideration for the recipient's exercise of official discretion. *Compare* TEX. PENAL CODE § 36.02(a)(1)–(a)(2), *with id.* § 36.02(a)(4). The statute requires more. Irrespective of a person's intent to "bribe"

---

[10]The State asserts that the contributions made by Stacy are not, as a matter of law, political contributions. It also argues that a legal-sufficiency review does not extend to a jury's determination of specific intent. We agree with the State that Stacy's payments were not political contributions as a matter of law because, to determine whether someone made a political contribution, the subjective intent of the contributor must be ascertained. TEX. ELEC. CODE § 251.001(3), (5). But we disagree with the State to the extent it argues that only a jury can determine whether a defendant had the necessary intent to commit a crime. *Delay v. State*, 465 S.W.3d 232, 247–53 (Tex. Crim. App. 2014) (defendant found guilty by a jury but convictions reversed due to insufficient evidence, including insufficient evidence of *mens rea*). The issue of specific intent is not insulated from legal-sufficiency review simply because the defendant had a jury trial instead of a bench trial.

someone, the legislature has decided that, if the benefit offered to the recipient is a political contribution, the actor has not committed bribery as charged in this case. "[S]ometimes appellate review of legal sufficiency involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed in the light most favorable to conviction, actually establishes a violation of the law." *Delay*, 465 S.W.3d at 235. We hold that there is insufficient evidence to sustain Stacy's convictions for bribery under any theory alleged by the State, and we sustain her first ground for review.[11]

## OTHER COUNTS

In her fourth ground for review Stacy argues that the evidence is insufficient to support her convictions for money laundering and engaging in organized criminal activity. We agree and will sustain her fourth ground for review.

### Money Laundering

The State alleged that Stacy, pursuant to one scheme and continuing course of conduct, knowingly financed, invested, or intended to finance and invest funds that she believed were intended to further the commission of bribery. TEX. PENAL CODE § 34.02.

---

[11]In addition to briefing from the parties, we have received an *amicus curiae* brief from the Pillar of Law Institute (Institute). While it does not take a position on Stacy's guilt or innocence, it argues that protected political speech is a fundamental right that must be jealously guarded. According to it, in resolving this appeal, we should address First Amendment issues raised at trial and send a message that state actors have a duty to respect free speech rights. In light of our disposition of this appeal based on legal-sufficiency grounds, we need not address the arguments of the Institute relating to the First Amendment.

Bribery was the only predicate offense alleged to support the money-laundering count. And, because the State cannot prove the only predicate offense it alleged, the evidence is likewise insufficient to support Stacy's conviction for money laundering.

Engaging in Organized Criminal Activity

A person engages in organized criminal activity if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, the person commits or conspires to commit certain predicate offenses. TEX. PENAL CODE § 71.02(a). The predicate offenses alleged in this case were bribery, money laundering, and tampering with a government document. In light of our holdings that there is insufficient evidence to support Stacy's convictions for bribery and money laundering, the State could prove Stacy's guilt only by showing that she tampered with a government document. Without proof of the predicate offense, there can be no conviction.

The State alleged that Wooten tampered with her 2008 personal financial statement (PFS)—a governmental record—when she filed it with the Texas Ethics Commission, swearing and affirming that it was correct, although she knew that it was not. *Id.* § 37.10(a)(5). According to the State, Stacy is guilty because she participated in a combination with Wooten and at least one other person (David or Spencer) to tamper with Wooten's PFS by omitting loans and gifts Wooten personally received from David, Stacy, and Spencer. *Id.* § 71.02(a). After examining the record, we conclude that there is insufficient evidence to sustain Stacy's conviction for engaging in organized criminal

activity.

A PFS is a verified statement that gives an accounting of the financial activity of an *individual* and the individual's spouse and dependent children during a certain time period. TEX. GOV'T CODE § 572.023(a). Candidates and officeholders must file a PFS. *Id.* § 572.021. Among other requirements, a filer must disclose any personal loans in excess of $1,000 and personal gifts over $250 received by the filer, his spouse, or his dependant children. *Id.* § 572.023(a)(5), (7). The relevant question then is whether there is evidence that Stacy, David, or Spencer gave Wooten money in her individual capacity. We conclude that there is none.

The evidence shows that Spencer paid Wooten's campaign expenses with money he received from Stacy. Spencer would then invoice the Wooten campaign. He did this knowing that Wooten's campaign did not have the funds to pay him when he sent the campaign bills. Instead, he paid for Wooten's campaign out of pocket on the understanding that Wooten would raise money after being elected and repay him then. Kyle Swihart, the State's forensic-fraud analyst testified that, not only did the Carys never give money directly to Wooten, there was no documented instance in which the Carys gave money to a third party who then gave money to Wooten. Because there is no evidence that Wooten received money from the Carys or Spencer that she was required to disclose on her 2008 PFS (i.e., she received no money in her individual capacity), there is insufficient evidence to support Stacy's conviction for engaging in organized criminal

activity.

## CONCLUSION

Because there is insufficient evidence to support Stacy's convictions for bribery, money laundering, and engaging in organized criminal activity, we reverse the judgment of the court of appeals and render acquittals on each count.

Delivered: December 14, 2016

Publish